(Cuyahoga County Common Pleas.)
January Term, 1899.

GEORGE O. WATSON, Administrator, v. THE ERIE RAILROAD COMPANY.

---

(1). Under the decisions of our supreme court, the fact that a railroad train runs at an unlawful rate of speed at a public crossing does not of itself constitute negligence. There must be some other element entering into the relationship and the situation to make an unlawful rate of speed negligence.

(2). Where there are data furnished by which the rate of speed can be determined, the evidence upon the proposition whether the train was run at an unlawful rate of speed will properly go to the jury. But if there is not, then it is a question of law for the court.

(3). The testimony of a witness that the train was "fast", in the absence of testimony what the usual rate of speed was, is not such evidence as furnishes a criterion or data by which the judgment of the jury can be applied and the rate of speed determined, as a basis for the charge of negligence, even if there are other facts and circumstances connected with the crossing which would make it a matter to go to the jury upon.

(4). The statute makes the failure to blow the whistle within the distance from a public crossing prescribed by the statute a ground for the recovery of all damages caused by such failure. But where within the statutory distance from the street crossing in question there was another public crossing, so that of necessity, in order to comply with the law, the minimum distance at which the whistle could be blown for the crossing in question would be beyond the other public crossing; such fact puts the plaintiff upon proof that a whistle blown beyond the other crossing was not blown between eighty and one hundred rods from the crossing in question in this case in order to establish the fact that the whistle was blown outside of the statutory limits for the crossing at which the plaintiff's intestate was killed, and within the limits for the other crossing.

(5). Where it is a question whether the whistle was blown for a crossing where another crossing is within the distance, prescribed by law for blowing the whistle for a crossing, as the minimum distance at which the whistle must be blown for a crossing is eighty and the maximum one hundred rods, it cannot be proven by mere opinion of witnesses, but it must be shown that the train was within those limits and the whistle was not blown in order to establish the fact that the law was not complied with.

(6). While the engineer of the train is held to ordinary care to ascertain if a person at a public crossing is in danger, and by the exercise of that care to save him if he can, it is the duty of the person thus on the crossing, to exercise ordinary care on his part to avoid injury when he finds himself in a critical place, or could ascertain that he was in a place of imminent danger by the exercise of ordinary care. Those two propositions form the complement of the law upon that subject. (The judge here reviews the facts of the case of L. S. & M. S. R. R. Co. v. Schade, which was originally tried before him, and was affirmed by the circuit court, 15 C. C., 424, and by the supreme court, 38 Bull., 259.)

(7). A man has a right to rely upon the performance of the duties which the law imposes upon railroad companies at crossings, or any other place, whenever it is not apparent before him, by the exercise of ordinary care, that they have not complied with their duty; and where but a look under those circumstances would have revealed to him the fact that his supposition was not true, and that the train was near him and that his danger was imminent, he must use care and activity proportionate to the situation to get out of the way.

---

Decision of the court upon the defendant's motion that the court direct a verdict for the defendant.

LAMSON, J.

There are three charges of negligence in this petition made by the plaintiff against the defendant company.

First, the rate of speed; and I have already said that I thought the rule was as laid down in the Schade case, (15 O. C. C., 424), and that is, that the rate of speed, standing by itself alone, under circumstances at a crossing, conceding this to be a public crossing—and all I shall say on this motion will apply to it as a public crossing—does not constitute negligence. There must be some other element entering into the relationship and the situation to make the rate of speed negligent, even if you had the rate of speed. But in this case it seems to me there is no evidence that fixes the rate of speed. There are no

data furnished by which the rate of speed in this case can be determined. If there is evidence upon that proposition, at least it might go to the jury. But if there is not, then it is a question of law for the court. That is my judgment from this testimony: No witnesses called. The rate of speed is a fact to be established like any other fact. It is true, it involves in itself much of the elements of an opinion; but that is because of the nature of the subject matter of the fact to be established. You can call your witness, who tells what he saw, and he says, giving his best judgment upon questions of distances and so on, the rate of speed was so-and-so: or, you could establish certain points of passage and time which would fix it. Nothing of that kind is done in this case.

One witness says the train was going fast—going at the usual rate of speed. Nothing to show what the usual rate of speed was, and nothing to show what the witness's idea of "fast" was. One man considers a thing rapid; another man considers it slow. It furnishes no criterion or data by which the judgment of the jury can be applied and the rate of speed determined, as a basis for the charge of negligence, even if there are other facts and circumstances connected with this crossing which would make it a matter to go to the jury upon.

Second, the failure to blow the whistle. That, the statute makes a ground of recovery—fixes the liability for all damages resulting therefrom upon the company, for failure to blow the whistle within the prescribed distance from the crossing.

But it appears that within that distance from this Boylston street crossing, was another public highway crossing (Miles avenue crossing). So that of necessity, in order to comply with that law, the minimum distance at which that whistle could be blown for Boylston street crossing would be beyond this other public crossing. That being so, I think it puts the plaintiff upon proof that a whistle blown beyond Miles avenue crossing was not blown between eighty and one hundred rods from Boylston street in order to establish the fact that it was not blown for the crossing at which the plaintiff's intestate was killed; to establish that whistle's having been blown outside of those limits and within the limits for the other crossing.

I do not think there is any presumption of law that establishes any fact, whether of duty or not, in connection with the charge of negligence. There is no presumption of negligence. I do not think there is any presumption of law that will establish any fact which is a necessary basis upon which to predicate this charge of negligence.

I do not believe there is any presumption of law that this whistle which the witnesses say was blown for Miles avenue crossing, without giving where it was blown, the distance from Miles avenue at which the train was, at about the time it was blown, or any date from which that fact can be determined: I do not believe there is any presumption of law that that whistle thus blown, was blown for Miles avenue crossing rather than for Boylston crossing. If the latter is a public highway and one with reference to which the law says the whistle must be blown. As the minimum is eighty rods and the maximum one hundred, it is a fact not to be proven by the opinion of witnesses; that is, it is to be proven by showing that the train was within those limits in order to establish the fact that it was blown and the law complied with, or, that it was between those limits and it was not blown, in order to establish the fact that the law was not complied with; not the opinion of the witnesses that it was blown for Miles avenue crossing, or was blown for Boylston crossing, especially under the facts and circumstances. That disposes of the first two specific charges of negligence.

The other charge is, that the engineer in charge of this train, having control of its operation—or the persons having control and operation of it—by the exercise of ordinary care could have seen the decedent in time, by the exercise of such care and skill, to have stopped the train or checked it, and permitted him to escape; and that brings us face to face with the doctrine laid down in the Schade case. That was affirmed by a divided court in the circuit court; it was affirmed by the supreme court without opinion. And as I laid the doctrine down in this court in the Schade case I have a pretty clear idea, so far as that case was concerned, of what its limitation was in my own mind, and its applicability; and I have since had occasion to apply it with its proper limitations.

In the Schade case, 15 C. C. 424, this condition existed: First, a dangerous railroad crossing—not a simple crossing with no elements about it which would particularly distinguish it over and above any other crossing, but a railroad crossing at which and as to which the railroad company was charged with knowledge and notice that a large number of people had been injured and killed, because of certain conditions existing at that crossing to which they were a party—not that strangers had, but which the railroad company in itself had, permitted to exist. Then the parties were in mid-winter, and at a late hour in the night. All those conditions existed at that time.

There was no evidence in that case

to show what was done or was not done by the decedent: that had to be presumed and inferred by the situation. He was in a wagon, situated as a person would be at that time of year, driving home at a late hour at night, having finished his business. He had his boy with him, his groceries and other things in the wagon, muffled up, as men would be under those circumstances, with a horse and wagon. The proof showed that the train was coming at from forty-five to over sixty miles an hour. There was a curve in the road, and coming out in sight around that curve a person on the track would not be able to see the light of the locomotive in time to have escaped by any possible exertion that he might make with his horse and wagon, before the engine would strike him at that rate of speed. It would cover in a bare second of time that space at that rate; in that situation, and with those facts, the court charged the law as it has been stated.

But with that goes this proposition, whenever the case calls for it, that it seems to me relieves it from the criticism of Judge Hale upon that proposition as laid down: It becomes a question of what constitutes proximate cause, and it all lies in the solution of that proposition. Judge Hale says, (see L.S. & M.S.R.R.v.Shade, 15 C.C.434,) in substance, in his dissenting opinion in the circuit court in the Schade case, "I cannot see, if a man is negligent in going upon a track, and the driver of the locomotive is negligent in not seeing him and stopping his train, how you can say that one is more the proximate cause than the other, and distinguish between them. Unless you can, then the rule is wrong, and should be changed". But I think when you give the full complement of the proposition there established and set forth, when the case calls for it, (and I think it is applicable in this case now before us) while the engineer and driver of the train is held to exercise ordinary care, and to ascertain if a person at a public crossing is in danger, and by the exercise of that care to save him if he can, there comes this duty upon the person thus on the crossing, to exercise ordinary care on his part to avoid injury when he finds himself in a critical place, or could ascertain that he was in a place of imminent danger by the exercise of ordinary care. When you take those two propositions together, then it makes the complement of the law upon that subject, in my judgment; and the failure to exercise care on the part of the railroad engineer would be negligence under those circumstances; and the failure to exercise such care on the part of the person crossing at that time would be negligence; and those two

would be proximate causes, and not the negligence in going into the place of danger.

Let us look at the situation in the case before us here. Here is a perfectly open situation, in broad daylight. Here is a straight track. There is no particular obstruction in the way of seeing this train approaching for a long distance. Here is Miles avenue crossing above, with the whistle blown for it only (as now, for this purpose, we may concede), but so that it can be heard distinctly down at this Boylston street crossing and clear beyond it; so that persons around about there act upon that whistle – persons located further away from that train than this person, looking up, see the train coming, see that it is going at such a rate of speed that persons ought to use care and activity in getting away from the track. And we have the decedent there where he is in a position of danger close to the track, with all that that charges him with—a pedestrian, nothing to do but step away from it; struck when he is off the track; the slightest care upon his part, certainly the exercise of ordinary care on his part, on that occasion, would have enabled him to ascertain the approach of this train and to have stepped away from it and let the train pass.

Judge Ingersoll says—and it is a very applicable proposition in the case—that he had a right to rely upon this whistle being blown, applying the doctrine that has been applied in regard to ordinances, as to whistles and as to bells, etc. True, a man has a right to rely upon the performance of the duties which the law imposes upon the railroad company at crossings, or any other place, whenever it is not open and apparent before him, at least by the exercise of ordinary care, that they have not complied with them. Concede that the railroad company was not blowing the whistle for this crossing, but was blowing it for the other crossing, and that the decedent supposed that it was blown for the other crossing, and that therefore it was more than one hundred rods or so away from him. Yet but a look—and men are held to know what, under ordinary circumstances, is apparent—but a look under those circumstances would have revealed to him the fact that his supposition was not true, that the train was near him and that his danger was imminent, and that he must use care and activity proportionate to the situation to get out of the way.

I think, gentlemen, this motion should be sustained. I think it does not come within the doctrine in the Schade case. It shows a situation where, in the exercise of ordinary care by the decedent he would have known

that he was in imminent danger, and, by the exercise of ordinary care on his part could have got away.

*Burke & Ingersoll,* for Plaintiff.
*Williamson, Cushing & Clarke,* contra.